The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons have in any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention for the Court is now sitting. God save the United States and this Honorable Court. McArdle, Good morning, I'm Kevin McArdle on behalf of the Federal Respondents and may it please the Court, I've reserved five minutes for rebuttal. Congress enacted Section 324 of the Fiscal Responsibility Act to expedite completion of the Mountain Valley Pipeline, finding that the project's timely completion and operation is interest. Two provisions of Section 324 apply here and operate to drive the Court of Jurisdiction over the pending petitions for review on two separate grounds. Let me ask you a preliminary question that's kind of interesting to me. Congress enacted this Mountain Valley Pipeline in the interest of international interest. It's been highlighted by a number of people. It's curious to me, I'm just, what is necessary? Was that necessary to put that language into the act for it to have effect? That it's done in the interest of the national interest of security? I don't think it was necessary to give the jurisdictional provisions that issue in this case effect, but it was intended, I think it's self-evident, to make clear that Congress was over maybe other competing interests that might be embodied. On a legal basis, and I'm thinking of a case like Shelby County where the Supreme Court looked at a statute that had already been enacted by Congress that dealt with Section 5, which was for the purpose of venting registration discrimination acts. Congress looked at this act that had already been in place and says, Congress, this thing is set aside or unconstitutional now because you don't have a finding basis to support the continuation of this act. And so the question that comes to mind is, were there findings or was there any type of action on the part of Congress to determine that in fact this pipeline is in the national interest? In enacting the language of the statute, which makes that finding. I don't think Congress is No, that's a conclusion. It is a conclusion to say it's in the national interest. The question I have, and I'm just asking, it was curious. I mean, they ultimately had nothing to do with the facts of the case, but it's curious to me because when I look at cases, I like for things to be consistent. I don't have an interest one way or the other how the case comes out, but when the Supreme Court acts or when this court acts or whatever, the consistency of the law is important. And I'm just wondering, first, was it necessary? Maybe it wasn't purposeless nature. They just did it as a matter of public interest to say it, or was it something they said that was fundamental and supported by findings of fact, because I don't remember there being congressional hearings. Of course, we'd have to take judicial notice of that like we have so many other things. So what do you think? Just your thoughts on it. I think it's not necessary for the operation of the jurisdictional provisions that issue in this case, but Congress clearly found it necessary to state that the timely completion of this project is in the national interest. And in subsection F, that determination applies notwithstanding any other provision of prior law, which might reflect competing priorities. Now, did Congress engage in fact-finding, independent fact-finding? In other words, did Congress engage in anything to support the fact that it said it? That's the only thing. But we can move on from there. I'm just curious as to what your thoughts were on that, because it's kind of one of those preliminary things that jumped out at me when you say something is something. And it reminded me of the Shelby County case in which Congress did say, well, you don't have any facts to do with this. Of course, Congress has yet to find the facts and now bring it back. But I was just curious. But you can move on. It seems to me what is necessary in looking at Supreme Court law is rather than just Congress picking a winner here, there must have been a new legal standard amended or set by this act. What is that new legal standard? Well, frankly, I don't think that's the law. What do you think is the law, then? Well, I think the law is Congress acts within the scope of its legislative authority when it changes the law, but not when it dictates outcomes. OK. Well, how did it change the law, then? It might be useful just to take a quick example. Congress enacted NEPA. Suppose they pass a statute tomorrow that said all actions of the U.S. Army Corps of Engineers are exempt from NEPA. They could do that. They created NEPA, and now they're carving out an exception. They don't need to create NEPA-lite that applies to the Corps' actions. No, I understand. I just want to know what, and I'm sure you have an answer to this, what is the change in the law here? OK. E-1, changes applicable jurisdictional law. Before E-1, someone seeking to challenge one of the covered approvals issued by one of the specified agencies that's required, that's necessary for the operation, the completion and operation of the project at full capacity, could have brought an action under the Natural Gas Act. Now they can't because Congress changed that applicable jurisdictional law, created a carve-out, and that leaves, it's up to the court to adjudicate whether that carve-out applies, and if so, to... That was going to be my question. What is left for the court to do, then, to determine whether this particular language applies to certain claims? You would have to find that the petitions challenge and authorization that was issued by one of the listed agencies, and that that challenge authorization is necessary for the completion and initial operation at full capacity of the Mountain Valley Pipeline. Congress didn't you, and that's all that Article 3 requires. Now, there's... Left it up to do what? To do what? What judicial function is left? Well, you have to determine that the statute applies, that E-1 applies, and then you, if you lack jurisdiction, you would need to dismiss, just like in any case where you find that jurisdiction. Can the Fourth Circuit do that? Oh, no. Well, yes, the Fourth Circuit can apply the statute as written. The Fourth Circuit, right. Yes. So, can we do that? Yes, you can look at the statute, apply it as written. Note that the fact that the petitions... Well, we can apply it as written. I said adjudication. That's really not adjudicating, that's just reading. Well, that's not really fair, because in Bank Marcossia, the Supreme Court made clear, Congress can dictate that a new legal standard applies in pending cases, even if the facts implicated by the new standard are uncontested. But you had a different standard then, right? Because it was a change in terms of effective affirmative defense, in terms of whether or not these assets were available in terms of... Right. And here we have... What substantive change do you have in the law other than a license for Mountain Valley to put in place and still in place? You didn't change any federal law. You just gave a license and then told the court, you can't do anything about it. Tell me how that's the same thing it was. Your Honor, respectfully, that's not what the statute does. It doesn't? No. The statute carves out from this court's Natural Gas Act jurisdiction, which Congress granted in the first place, a class of actions. That class is the class that existing at the time the statute was enacted and future approvals that are issued by one of the listed agencies and necessary for the construction and initial operation of the pipeline at full capacity. They changed the jurisdictional standard that they granted. They're entitled to do that. Even Klein says that if Congress just withdraws jurisdiction over a class of cases, that's a perfectly legitimate exercise of legislative power. And that's exactly what this argument is. The application here is undisputed. I should pass it with you, should I not? But you're highlighting the point that it happens to apply here and it's outcome determinative. But Bank Markazi tells us that that doesn't raise any constitutional problem. Congress can make a change in the law applicable to pending cases, even if it's outcome determinative. That's their whole case. And yes, it's up. As you can see, the Supreme Court law on this thing is somewhat unclear. I think we all can kind of agree with that. You've got the Klein case. Then it goes to a series of other cases, but probably the most important one that most people argue is about the Tuck's case, which is really, I guess there's no opinion because you really have no real solid opinion on it. Do you think Klein is still good law? It's still good law, but it's subject to the limitations that the Supreme Court has recently placed on it in cases like Ploutt and Bank Markazi. In Ploutt, the court said Klein doesn't inhibit Congress from changing applicable law, which is what happened here. And in Bank Markazi, the court made clear that the problem in Klein was Congress tried to dictate the result of a pending case without changing the applicable standards for presidential pardon, which Congress had no authority to change in the first place, because that's the prerogative of the president. We don't have those two problems here. And remember, Klein also dictated that the cases should be dismissed, which is something that bothered Chief Justice Roberts in his Patrick dissent. Let me ask you this in terms of the change, the amendment, whether or not it's a jurisdictional argument, but it seems to me, would you not agree that that seemed a bit more compelling to say Congress decided that under this particular underlying act, certain things can't be done. You can't challenge the grant of it. That seems to be a change. Is that the substantive change that you think is just one of the stronger points you can make here, that Congress did something to amend that act to cause a different change to happen than relying upon the old act and just saying you can't do it? Well, I think C-1 changes substantive law. If by substantive law, you mean law that pertains to the merits of the petitioner's claims. But of course, no change to jurisdictional law changes substantive law in that sense. And that doesn't render change in jurisdictional law unconstitutional because Congress has plenary authority. Well, the problem I have with jurisdictional basis alone would be, what would be the limiting principle of that? Would it be that Congress simply with any act could simply, because we are an inferior court here, can just on its own decide no jurisdiction, therefore it's a change in the law, a substantive positive change, and we can do it? Well, that's what the Supreme Court- Does that alone want to be enough? Even Klein says if Congress withdraws jurisdiction over a class of cases, if that's all Congress had done there, that's fine. Now, let's, you know, Patrick, all three opinions- But don't lose me there because class of cases, we don't have a class of cases here, do we? Yes, we do. We most definitely do. So you see it as being similar to Klein in the instance that a class of cases has been withdrawn. It's not similar to Klein, but it falls within what Klein itself would be a permissible exercise of legislative authority because it applies not only to pending cases and not only to authorizations that were existing on the date of enactment, but to future- Where's the limit on it? If Congress can intervene, can intervene in any type of case we have and take away jurisdiction and that's the end of it? Yes, if you buy into Chief Justice Roberts' intent- I'm going to take it, too. I'm just trying to understand where the limit of principle is. We're in a death penalty case, and the Supreme Court just- Congress says we're going to take away jurisdiction of the courts to even deal with that anymore. Can it do that? I think it could. It might have other constitutional problems. It might have, you know, equal protection problems or something like that, and the Supreme Court pointed that out in footnote 27 of Bank Markazi that there could be other constitutional limits, but I don't think it's a separation of powers limit. I see I'm out of time. I'll reserve the rest of my time for rebuttal. Thank you. All right. Verrilli? Good morning and may it please the Court. I'm Don Verrilli for Mountain Valley Pipeline Intervenor. I've reserved two minutes for rebuttal. I just want to know one thing at the outset that, of course, one of the arguments that we've made, and we're content to rest on the briefs on that, is that the question of the constitutionality of the statute is one that's been exclusively reserved for the D.C. Circuit, but the Court has asked questions about the constitutional issue, and I'll go right to them, and what I'd like to do... Because we have to determine our own jurisdiction, and you agree it's always our role to determine our own jurisdiction, right? I agree with that, Your Honor. And in doing so, we have to consider the constitutionality of the statute, don't we? Well, I think technically what the Court would need to consider is the constitutionality of the D.C. Circuit, so that's the question I think the Court would have to answer from our point of view, but getting to the merits of both Your Honor and Judge Lynch... You're saying this hearing is permissible for a limited purpose. Yes, absolutely. It is not one that is without authority. It is not one in which we don't have jurisdiction to have this hearing. Absolutely right. Yes, we certainly agree with that. I've been hearing that all over the place, that the D.C. Circuit is having a hearing that they shouldn't be having, and I'm wondering what happened to the rule of law that the Court can't decide if it has jurisdiction? That seems so simple and so fundamental as a democratic principle. We're 100% with you on that. It's something I think that unfortunately is being lost, but in the midst of all this hyperbole that's going on, there needs to be a calmness of understanding that we're just doing our level best to do our job and no more. Yes, we fully appreciate that, Your Honor. Yes, particularly when Mountain Valley Pipeline made the motion to dismiss that brought us here. Yes, absolutely. We're completely in agreement. All right. So a question that both Judge Sackler and Judge Lynch, you've both asked about what's the change in law. My friend from the government has addressed the jurisdictional point. I think there's a more fundamental point, and Judge Lynch, you were getting at it a little bit. I think it actually makes this a straightforward case. The ratification is a substantive change in the law. What this statute does is ratify all existing permits and authorizations. And it's important to understand what ratification means. What Congress can do. Which Congress can do. And it makes sense. You know, when I first approached this case, I said, man, that sounds extraordinary. You can come in and do this, but they made that first statute. If they want to change the law, I suppose they can do it. Exactly right, Your Honor. And what ratification means, I think, is critical here. And I think my friends on the other side just don't have this right. Ratification does not mean Congress is saying that these permits and authorizations are lawful under existing law. It means something different. What it means is that these authorizations are directed by Congress to be lawful and the requirements of pre-existing law. That is what ratification means. That's what the Supreme Court defined ratification in in the Heinzen case, which we have relied on in our briefs. That's exactly what happened in Heinzen. There was a tariff that had been imposed unilaterally by the President that was unconstitutional. Somebody came into the Court of Claims and said, I want my money back on the tariff. And Congress then intervened, enacted a statute saying we're ratifying the lawfulness of this exercising our proper authority. And as a result, that claimant in the Court of Claims lost his case. And that's what ratification is. That's also how Swain and Boyd, the other Supreme Court decision we've cited, defines ratification. And that's what happened here. It's quite unambiguous that that's what happened here. Let's take the argument you just made, you're making now, which I understand it, in the context of separation of powers. So in your ratification, I think I'm correct that from going forward to the end, meaning full capacity, Mountain Valley can violate any environmental protection that exists in existing law, and it's okay. Am I right? No, I don't think it's exactly that. Well, what would stop them from, you just said, I thought I misunderstood you. You said we ratify. We're not saying what they're doing is right. We're just saying whatever they're doing is permitted. That's what you said, didn't I? With respect, Your Honor, I think Congress would not have ratified unless it thought. Well, we don't know what Congress thought. We have to go by what they wrote. Justice Scalia would tell us often in his opinions. Am I right? That's absolutely right. Am I right that also it has to mean that Mountain Valley can violate, no, it wouldn't be a violation because they are ratified to do anything that normally would require permit and approval for completion of this pipeline. Is that right? They have to get the permit and approval. The statute says it has to be given to them. Yes, that's right. Well, then they have that then. And so my question is very simple. Isn't it true that they could violate any environmental law and it's ratified until they get to full capacity? Is that right or wrong? I think I would phrase it differently. No, no, you don't have to phrase my question. Is that true? Congress has made a decision that those laws don't apply. That's that. I'm just asking you, is it correct that they could violate any environmental law? Well, I guess I'm not trying to quibble with Your Honor, but it wouldn't be a violation. Saying the law doesn't apply to Mountain Valley Pipeline any longer. And the result is they could do whatever they want to do in terms of what otherwise would be a violation. Is that correct? Is that correct? The statutes would no longer be enforceable against them. That's correct. And so then isn't that a separation of powers problem? Because once you have that situation, the President of the United States, the head of the executive branch, could not intervene because the President would be in violation of the statute if they said, that's too far now. We're not going to approve that. Wouldn't the President be in violation of the statute? So I don't think the President would have that authority given the statute. And I think the key, and I do want to direct- That's what I said, the President would be, isn't that a separation of powers? I don't think so, Your Honor. Why not? Because Congress determines the authority that federal executive branch agencies have. And Congress can tailor that authority in a way that it thinks is appropriate. And that is what has happened here. But aren't these agencies under the executive? Yes, they are. Well, then is it the President, the head of the executive branch? Yes, of course. Well, then wouldn't that interfere with separation of powers? If you now have this law that says, no, Mr. President or Madam President, you can't do anything about this, no matter what the violations may be. That's hypothetical, obviously. But what are these violations of? Congress has said it's green-lit, and you have no stoplight. The role of the Congress is to make the law. The role of the executive is to execute the law that Congress has made. And the law that Congress has made here- And I do think it's very important to look at subsection F of the statute. And with the Court's permission, I'm going to read the relevant language, because I think it's critical. And I think it goes to the questions Your Honor is asking me. It says, this section supersedes any other provision of law that is inconsistent with the issuance of any authorization, permit, verification, biological opinion, incidental take statement, or other approval for the Mountain Valley Pipeline. Congress could not have been clearer that it is changing the substantive law. It says it right here that that's what it's doing. Is that a selective jurisdiction stripping? It seems as though it's dealing with the granting of it. What happens if something is denied? Does jurisdiction still lie with this Court or the D.C. Circuit? Yes, it would. But Congress has the authority- It doesn't lie with this Court, because that does not cover it. The grant of it seems to shift it to the D.C. Circuit. But if it's denied, does it come here? I think it doesn't cover that. I agree with that, Your Honor. But I do think to get to- I want to make a point, if I could, in my remaining time here, because I think it's important to tie this substantive ratification to the jurisdictional provision. Because, you know, in terms of casting around for what the test is, I think Bank Markazi states the test. And the test is that Congress cannot dictate the result in a particular pending case without changing the substantive law. Congress has changed the substantive law in the way that I've discussed. And that's very relevant to the jurisdictional challenge as well, because the test for the jurisdictional challenge- And there really isn't clear lawness, but even taking Chief Justice Roberts' dissent as a statement of the, I guess, most aggressive view of the law, is that Congress can't dictate the result in a particular case by manipulating jurisdiction without changing the law that applies. And that was my initial question to your colleague. What was the change in the law? And I think you all have answered that. My question now is, who, if anyone, determines when Mountain Valley Pipeline is operating at, quote, full capacity? You know, Your Honor, I don't have an answer to that question. Because that's part of the change in the law, right? It's what's necessary, what is protected, you know, what is held to be ratified, and what is protected from judicial review is all permits, authorizations, et cetera, that are necessary for Mountain Valley Pipeline to finish the pipeline construction and operate at full capacity. So, I guess there would be a judicial question whether a particular authorization is necessary for the pipeline to operate at full capacity. Or whether, I mean, we have to determine when full capacity is to determine, because after full capacity, this statute would appear to not cover any claims that follow full capacity. If there are environmental violations after that, then this statute doesn't cover those. Those can be brought somewhere. I see I'm over my time. May I answer the question? I don't think that's the correct interpretation, Your Honor. I think what it would allow judicial challenge to are things like, if the pipeline was going to build an additional spur or something like that, that wasn't covered by the original plans and the original authorizations. I mean, at some point in the future, I think this goes a little bit back to Judge Wynn's question. Maybe Judge Gregory's about environmental violations without recourse. Once the pipeline is at full capacity, if there are violations after that, that somebody brings a claim on, is there judicial review and where? I think it would depend on the claim. Because if it were an argument that the permit or authorization is being violated because there are these environmental harmful practices, excuse me, I think that's clearly covered by the statute and there would not be judicial review of that. If there's some other kind of environmental claim that doesn't involve a challenge to the lawfulness of the permit or authorization, then I guess it wouldn't be covered by the statute. But this sort of discussion, I think, helps your argument that there are things left for the court to do here. It doesn't completely lack judicial review. I do think that's right. And I do agree with the basic point that my friend, Mr. McArdle, made, that it is that this is different from being Ray Klein and from Popchock, and that Congress didn't say to the judiciary, you shall dismiss this case. And that's an important difference. It said, here's the new law. And then it's up to the court to decide whether the permits and authorizations that petitions are challenging are ones that the statute covers and protects. Now, that may be a straightforward inquiry, but it's a judicial inquiry. It's an exercise of the judicial power. And so I do think, in addition to what Your Honor has identified, and the possibility, for example, that there could be an application to build a spur or something new, and then that would all be subject to judicial review, absent any further action by Congress, then Your Honor is quite right that there is law to apply here. One question regarding Klein. The Supreme Court seems to, when you read the subsequent decision, I mean, it really did work hard to try to distinguish that case or to weave it in. Do you think that Klein ultimately was wrongly decided, or that the Supreme Court today would decide it differently? So, can I answer that? I think this will answer Your Honor's question. At least I do think the Supreme Court would decide it in a much narrower and more careful way than the broad language in Klein. And I can point, you don't have to take my word for it, that's what this court said in the Brainerd case, which we cite in our brief 691 F. Second 695. It said that the better reading of Klein, I'm quoting now, is quite narrow and construes the case as holding only that Congress violates the separation of powers when it presumes to dictate how this court should decide an issue of fact under threat of loss of jurisdiction and purports to bind the court to decide a case according with a rule of law independently unconstitutional on other grounds. And remember, Klein was about the effect of a presidential pardon, and Congress was trying to abrogate the positive effect of a pardon through the jurisdiction stripping, and that was the essence of the problem. That's what this court's opinion says in Brainerd. And this court's opinion actually anticipated exactly what Justice Ginsburg's opinion for the same thing, that it applies in that narrow circumstance. It doesn't have the broad application that my friends on the other side are advocating for. And aside from that overreading of Klein, I would just point out that they don't have any other authority for the proposition that Congress can't do what it did in this statute. They don't have any case holding a federal statute unconstitutional on the theory that they're advocating here, other than Klein, which, as we've just said, doesn't extend nearly so far. Well, when you start out with a case as old as Klein and has been hanging around for a while, typically we use that pretty strong stuff, but you're right. The Supreme Court, I think, has done its best to cabin that case a bit, so. Yeah, and Bank Marcosi, if I may, just make one last point, recognizing you've been very indulgent with my time, and I appreciate it. In Bank Marcosi, I think in the very next paragraph after the one talking about Klein, it talks about the kinds of things Congress can do, and it cites with approval a D.C. Circuit case, National Coalition to Save Our Mall, from the early 2000s. And I would commend that case to the Court's attention. We cited it in our briefs. It's very, very similar to this case. There was an effort to build World War II Memorial on the Mall. It required permits from various government agencies. They were tied up in litigation. Congress enacted the statute saying, we're ratifying these authorizations because we want the World War II Memorial built now. The D.C. Circuit held that that was within Congress's authority to do, didn't raise a separation of powers problem. And in Bank Marcosi, the Supreme Court cited that with approval as an example of what Congress has the constitutional authority to do. Do you think there's a difference between changing the law and suspending the law? Yes, because I think what this does is say that these permits and authorizations are valid irrespective of those prior statutes. So you're suspending the law, really, aren't you? With respect to this pipeline, it's saying that those provisions could previously have been a basis for saying that the permits and authorizations were not valid and enforceable. They no longer can be a basis for saying that these permits and authorizations are valid and enforceable. I think one could understand that as Congress granting an exemption from those or a suspension of those. You know, there are different words you could describe, but I think that the key point is the operative legal effect of those statutes is now that they cannot be invoked to block the enforceability of a permit or authorization that is necessary for construction or full  construction. So I'll let you go with this, but when it comes to judicial authority, that's something that's very precious to our system. I mean, it goes back to the Mall of Irving Madison Judicial Review. And when you're talking about stripping our jurisdiction, which you can, obviously you can, but that's why it requires when you do so, you change the law, that substantive law, that based on the application of that, not directing any kind of decision, but based on the application of the new law, it changes. You can do that. You can't put it someplace there. But here, you're talking about suspending it, and it goes back a little bit. I think Judge Stacker asked a question about the question about capacity and when it's full capacity, for example. That's totally in the hands of whom to determine that. Who determines that it's full capacity? Mountain Valley? The government? Who? Well, the way the statute operates, as I understand it, is the statute's directed at something slightly different. It's directed at saying that the permits and authorizations necessary to allow Mountain Valley Pipeline to complete and get to the point of operating in full capacity are lawful, irrespective of the other statutes, the statutes my friends on the other side of the boat, et cetera, and that there's no jurisdiction to review that question. It didn't say they were lawful. It just said they're approved. That's the big distinction here. It says they're approved. It didn't say it was lawful. Well, I think you said that yourself. I think at least Kyle said, we're not talking about whether or not, in fact, we're saying this is correct in terms of existing law. We're just saying that it's approved. Is that right? Well, I guess I would phrase it a little differently, Your Honor. I would say they're lawful and enforceable, irrespective of the prior law. That's what the word supersedes means in subsection F of the statute, where Congress said- I know it supersedes me, but you're going all around Robin Hood's bond and not answering my question in terms of who decides what is full capacity. It's an easy question. But respectfully, I don't think it's a question that- You don't have to think about the question. Just answer it. So, Your Honor, I'm not trying to be evasive. I'm never going to get a direct answer from you. I'm just asking you this. Who decides when there is full capacity? That's simple. So- Who? Who? I'm sure that relevant agencies decide the question of full capacity, but- How do we know that from this act? But the act isn't directed at that, Your Honor. No, that's the problem. When we talk about our jurisdiction, we don't care about necessarily what the act is. We have to know when we can be judges again and actually adjudicate things. You're saying you can strip it. Fine. Okay, let's assume that's correct. Do you have a new substitute law? Let's say that's fine. But when is that over and we can go back to the old-fashioned way that courts judge facts and those kind of things like that about existing law? Who decides when that resumes? That's all I'm asking you. Yes, and the best answer I can give you is this, and I believe it is a direct answer to Your Honor's question. In a situation in which Mountain Valley Pipeline, hypothetically, comes back to the federal government and says, we want to build additional spurs. We want to build something beyond the approved plan of the original pipeline. At that point, the permits and authorizations necessary to carry out that kind of work would not be necessary for the construction and operation and full capacity of the pipeline. So they'd be outside the statute. So that's certainly an area in which there would be judicial review. Then the statute wouldn't block it. But what the statute does focus on is not the abstract question. That's why I guess Your Honor and I were getting a little bit of a tussle here is that it's not the abstract question of whether there's full capacity or not. Is this a challenge to a permit or authorization necessary for completion of construction or operation of full capacity? So the question is about whether the permit or authorization is necessary to achieve those objectives. And that's the scope of where Congress has changed its substantive law, and that's the scope of where Congress has said there's no— And as long as you approve, you meaning—not you, Mountain Valley—as long as the government approves it, the court can't get involved because it's approval, even if it's beyond what we thought was full capacity. Still, the court has to stand aside and tell—well, if the government says, okay, you want to go to another state or do something, another spur, as you mentioned, then if we approve it, then the courts don't have a say, so still. So that way you answer my question, then basically that metric never—the goalpost keeps on moving based on who wants to kick the ball and how far. I'm sorry if I was unclear about that, Your Honor. If Mountain Valley Pipeline wants to build a new spur and they would need to go get permits and authorizations, they could be challenged under these prior laws, and courts would have jurisdiction to consider them. They're outside the scope of the statute. That's—the question under the statute is whether these permits and authorizations are necessary for completion of construction and initial operation of full capacity. Last question. Based on that, you say it's in the statute. Where on here does it end? What's the terminus of the pipeline based on capacity, full capacity? So I want to make sure, because you said that if they want to do something different, they have to come back. What is the terminus? I'm talking about now just linearly geography. What's the terminus? So the FERC has approved a pipeline. It runs from its start to its finish. It has a particular route. All that's been approved. And so any permits or authorizations necessary for completing that approved pipeline and operating in a full—initial operation of full capacity are within the scope of the statute. That's how the statute defines where the law has changed substantively and where jurisdiction no longer exists to review. That's the essence of it. All right. Thank you. Thank you. All right. Ms. Hunter. Thank you, Your Honor. Kim Hunter with the Southern Environmental Law Center for Petitioner of the Wilderness Society. I'd like to start by agreeing with Mr. Verley that we should be focused on the supposed question, jurisdictional question for this court being focused on those approvals that are, quote, necessary for construction of the Mountain Valley Pipeline. And that point is exactly why there is nothing left for this court to do. Because in Section A of 324, there is reference made to specific FERC dockets which reference which approvals are needed. So the total scope of what approvals are necessary and would therefore fall within this court's—the we know what that is. And so there really isn't anything for the court to do. It's what Justice Ginsburg referred to as a fig leaf. It's not really an adjudicative role. There's nothing for the court to decide. And it's therefore much more analogous to— Well, one of the things that could be left for federal courts to decide is whether initial operation at full capacity is now complete and any new claims are beyond the scope of this authority. That's correct, John. And a separate case— Why isn't that enough for this statute to withstand constitutional muster based on Supreme Court precedents? Because the question that the court posed in Robertson and Benk-Molkazi in the Podcheck case was not, is there anything left for the court to do in future cases, in other people's cases? The question was, in pending litigation before the court, has Congress completely usurped the judiciary's role in that case? And that is exactly what has happened here because—and Mountain Valley even said so in one of their briefs to this court, and I'll quote— I'm sure they didn't mean to. Well, they said—I mean, they said the unambiguous text prevents the court from taking any further action in this case other than dismissing it. And they have stated that over and over again, including to a brief to the Supreme Court last night. So that's really different than their position here where they're now importing this whole new standard, which, as I've just explained, is not a standard at all. I would also like to turn then to this issue of ratification, which I really think is a little bit of a red herring here. There is no doubt that Congress has their broad power to ratify past actions, and the Heinzen case makes that very clear. The Heinzen case, by the way, did not involve an Article III issue, did not discuss Klein, did not discuss separation of powers in this context. And that's because, just as it does with regular legislation, Congress has power to pass laws of general applicability, just as it has power to ratify actions in a generally applicable way, as it did in Heinzen, where the ratification was focused on the entirety  The problem, just as it is with regular legislation, is if that ratification is employed in this super targeted way to pick a winner and a loser in a pending case. And it really doesn't matter whether Congress does that via its usual legislative powers or via ratification. What it is doing with that act is swooping in and telling a court exactly how it has to decide a case. And that's what it has done here by ratifying the approvals which are at issue before this court, because what it's telling this court is you can't decide whether those approvals are legal or not. The basic rule that we would submit, and we agree that certainly the rule from Klein has been sharpened over time by the intervening cases, but it's Those are in the R circuit. We've read Klein rather narrowly, correct? How do you respond to opposing counsel's argument about Brainer? Yes, Your Honor. Brainer certainly predated both Bank-McCarthy and Hatchek, and I believe Robertson. If you look at the way that Brainer was decided, it is simply inconsistent with the hypotheticals that Justice Ginsburg poses in Bank-McCarthy. If Smith v. Jones, Smith wins, that does not involve a factual finding as was required in Brainer. It doesn't involve a constitutional issue. That test from Brainer, respectfully, cannot be the test that has been subsequently articulated by the United States Supreme Court. We would submit that a better test would be that Congress impermissibly crosses the line separating the judicial and legislative branches when it passes legislation that does two things. One, targets specific pending litigation, and two, directs the court to reach a particular result under old law without providing any new substantive standard. There has been no majority of the United States Supreme Court which has upheld a statute like this that provides absolutely no new substantive standard for the court to apply and which is really focused on particular pending lawsuits. That just hasn't happened. This would be a case of first instance. And opposing counsel says you don't have any case that says Congress can't do this. Well, respectfully, Your Honor, Klein certainly says that Congress can't do this, and the basic foundational ruling in Klein is upheld in Bank Marcosi, is even upheld in Pacek, certainly is upheld in Robertson and Pope and many other cases over the years. The Supreme Court has had plenty of time to declare Klein bad law, but it hasn't. And I think the reason is, is because the principle is upheld in Pacek. Well, the principle... There's no majority, right? That is correct, Your Honor, but certainly all of the... No justices said that Klein was bad law in Pacek is, I guess, the best that we can take from that case. But it is worth pointing out that there were four justices in that case that said a unilateral strip of jurisdiction, as we have in this case, would not pass constitutional muster because you can't use jurisdiction stripping as Congress has intended to here as a means to an end, and that that would essentially just be empty formalism. An empty formalism is exactly what my colleagues on the other side want to have here. They're saying, well, no court, we're not saying that you have to pick us as the winner in this case. We're saying that you first have to look if... That we are the winner. Exactly, exactly, Your Honor. So it would be analogous to a case in Smith v. Jones. Smith wins if this court determines Smith is Smith, and by the way, the statute declares Smith's social security number. So there's just nothing actual left for the court to do here. So the matter before us right now, one of the things I've not heard the word state brought up at all in this hearing, and I guess it's because this chose not to challenge that for this court.  I see the paper that I guess everybody knows now the Supreme Court has vacated the stay in this case, but that doesn't affect the arguments that we're currently hearing in this case as I see it. The stay is simply an extraordinary type relief that just hauls us while something is being decided. And from what I understand, unless I'm wrong, we continue where we're going. We have yet to decide that which is the fullest extraordinary matter of holding things in place. And if you prevail, there will be remedies that could be exacted down the road from it. It's just that for whatever reason, the Supreme Court decided at this point not to do that. And that was not unexpected. But at the same time, when you have relied heavily on the design case, there are a number of legal scholars that have gone with that case and really worked it through. You heard the other side argue about it, and I've asked about it. Because the consistency of the Supreme Court's law is important to us, and you ought not make law based on any particular party or any particular person or entity. I think all of us, we follow the rule of law, and sometimes the rule of law does not please people in certain positions. But the rule of law sometimes exact results that are not, I guess, sometimes they're just not politically favored. But at the same time, it's the rule of law. And that's kind of the conundrum the court has always put in. When you are making decisions that you don't appeal to a constituency, you just follow the law. You wrote it, and we do it. And it comes out a particular way. But in this instance, with the crime case here, that's why I asked repeatedly, if you read that case in a strict manner as what it holds, it does tend to favor you. But then the subsequent cases that have come out for the Supreme Court, and sometimes the Supreme Court doesn't like to overrule itself. It will temper it or color it a little different on it. I just find it hard not to say that either it's overruled it or it has significantly limited, as has been alluded to, as being a very narrow ruling. Do you not agree? I agree, absolutely, Your Honor. It has narrowed it over time, but not to the point where it does not exist. And for good reason, that regardless of, you know, comings and goings of different political consequences, the separation of powers is fundamental to our system of government. And so I think that's why there still has to be some line between the judicial and legislative branches. We couldn't have, for example, Congress in its next budget cycle say every legislator gets to pick a case in the Fourth Circuit where you can just pick a winner and a loser. We know that that would not be okay. And so there has to be a line. And respectfully, here that line has been crossed. We've seen in those other cases, sure, where it's been winnowed. But there's always been that substantive standard left. We saw that in Robertson. There was a substantive role for the Congress line. Well, Congress can do that, as long as there is, according to the Supreme Court, as long Your argument is there's not a new standard here, correct? That's right. Unlike Frank McCarthy, where there was a new standard, unlike Robertson, where there was a new standard. Or Congress could do it without a new legal standard if they did it in a much more broad and general way. What they can't do is those two things together that targeted particular cases without providing the new standard. And that's why this particular statute is so problematic. And I believe you can read consistently with all of the prior Supreme Court case law on point and still certainly deny the respondent's motion to dismiss here. You see, one of the key parts of this case, and one of the things the Supreme Court could help us out on, when they issue decisions that are conflated and dance around the issue, they don't help us a whole lot. And so when a case like this comes up, an issue that's argued by the other side is, can jurisdiction stripping alone be enough? And they argue that quite strongly. And they correct the plurality in Pataj says that. But it's plurality. It doesn't say that. You only had four justices to agree with that. The other two that formed the six there went on the immunity side of it. So you don't really have a statement that says that alone would be. And I question, could it be? Even in opposition, Chief Justice Roberts was one of the sending justices in that case there. And that really came up. Is that going to be enough just to strip jurisdiction? And if so, what is the limiting principle of doing it? And that's sort of the import of why we are here today is to understand from a jurisdictional perspective, which we've all agreed that we are here by proper authority to determine that question of jurisdiction, not getting a whole lot of other stuff. But that's a key point in this case here. I don't know if we're going to get a pronouncement from the Supreme Court on it. I think it's one of these cases that sort of dance around and leave it for another day. But where this case has started, and we cannot be blind to the history of it and why we are actually here, the law is what we're going to stick with. But where does it go? And how is it going to show back up in a different context, maybe in a different environment as to, no pun intended on the environment thing, but as to how this would turn out? I mean, that's really the grinding part of this case. That's one of it, is what does the touch? When will the Supreme Court give us an opinion that lays it out clearly? We wouldn't be here if it had been a clearer case on it. Well, and I can't answer the Supreme Court, Your Honor, but I will just know that in that case, it's not just that there was this plurality and Justice Roberts' dissent, but Justice Sotomayor wrote separately to join with her dissenting colleagues to say that a jurisdiction stripping as a means to and on would not be sufficient to satisfy separation of powers. So what you have in that case on this precise question of the jurisdiction stripping is four on one side and four on the other side and sort of unclear where Justice Ginsburg was on that matter. So I will turn the rest of my time over to my colleague, Mr. Tini, unless there are further questions. Good morning, Judge Gregory. May it please the court, counsel. My name is Derek Tini and I represent the petitioners in the Endangered Species Act case. Good senses make good neighbors. I think that gets at the heart of this question. Right. And Robert Foss teaches us that. Justice Scalia wrote. Off a little bit, but I understand you've got a good argument on that. But let's back up. You're going right into that question I just asked about jurisdiction stripping. I'm happy to. Because how do we, as the Fourth Circuit, decide that issue brought squarely by the other side, they argued it very strongly, and they've got four justices on the side, you know, that sends it quite clearly. Just don't have that fifth one that makes it a majority opinion and binds us to it. But it is somewhat persuasive. And how do we resolve that question? Spring Court left it wide open. And now it's now before us as one of the bases. So in other words, it doesn't have to be the basis. What I understand, they argued other bases, too. But should we go in that direction? And if we do, what guides us to do that? I think the guidance comes from Klein. And it comes from this basic principle that Congress's power to control the courthouse doors in the first instance does not also empower it to throw a party out of court, to reach into the courthouse and throw somebody out because they prefer their opponent. And that's what crosses the line. So I would offer that Ms. Hunter is correct, that a jurisdiction stripping provision would be unconstitutional if that's all it were. And here's why. Here's why. All of this about the effect and the meaning and whether— But according to four justices on the Supreme Court now. But according to four other justices, it would be, right? And we're stuck in that rub also. And, you know, the makeup of the court has changed a bit. I mean, we must be cognizant of that since 2018 as well, that we now have three different justices. So, you know, we could start pulling them and, you know, making alignments. But that's much like counting angels on the head of a pen. What's the reasoning behind it? What's the reasoning behind why the jurisdiction strip would be unconstitutional by itself? And here's what that is. Because you couldn't answer the Marcosi question, right? If the jurisdiction stripping alone were enough, it would prevent courts from asking the critical separation of powers question that Marcosi suggested is that issue. Is there a substantive change of law? If jurisdiction stripping were enough, if Section 324E1 were sufficient to end this case, then the court would never get to address the question of, well, what is the effect of 324C? Is there a change of law? And so that's why the jurisdiction strip itself cannot be enough to end this case. No, sometimes we can predict kind of where the Supreme Court would go. But that Patach case is a strange case in terms of the mix of it for what we usually would think about it. I mean, you had Justice Thomas, who joined with Justice Breyer, Justice Alito, and Justice Kagan for that jurisdiction strip. Then you had Ginsburg and who else was with Ginsburg? Oh, and Sotomayor went with the immunity. Then in dissent, you've got Chief Justice Roberts with Kennedy and Gorsuch. I mean, the case is all over the place. You can't look at what we would all think about as, well, we as judges don't like to think in these ideological things of conservative versus liberal. We just don't buy that because I don't think it's true. I think we follow the rule of law and it falls in certain camps. But this is a case, if you ever want to see one, it's not going to give you a prediction on how the Supreme Court would rule on this case because they're all over the place in terms of their usual division, and then they're all over the place in terms of how it's happened. So when the Supreme Court gives us a case like Pataj, what in the world do we law courts do with it? That's the question that's coming to us. I mean, and now the issue comes to us and it doesn't help us a lot in terms of which direction to go in. I understand sometimes you just cannot agree, and I understand that. So what? I mean, you've argued this case, Ilsa has argued it, Klein has put into it, you've got a couple of other cases. You've got the McCarthy case I heard brought up in the whole bit from the D.C. Circuit and then the Supreme Court. But that's the problem when we get a case here. And then we just have to follow the law. We are what you call an inferior court. But we have to follow the law. We don't follow political whims or people calling us one thing or another. We follow the law. And when the law is like this, what in the heck do you do? That's the question. And what do you, how do you, how do you want us to advance on it? I, you know, I suppose that's, you know, why there are guaranteed lifetime appointments and salaries. It's the hard work to divine what the law is, right? I don't, I say that kind of facetiously. But that's what judicial independence, and we're pretty independent about that, the lifetime of Congress. The felons knew what they were doing when they did that. That tells us, yeah, we can make a rule, but we'd like to do things. Sometimes you'd like to have some notion of how ultimately the Supreme Court would come on it. And this is a case where there's a lot of back and forth. Absolutely. And as you observe, Judge, when it doesn't align in some of the common ways that people, you know, conventional wisdom would align it. And so it really comes down to looking at what are the guideposts? What do we know? What can we look to the law and find? And so we start with Klein. And one of the things that is, you know, you know, you talked about the scholarship of Klein. Some people think what has happened with Klein is it's become reversed with the Spooner-Peggy rule. The Spooner-Peggy rule suggests that, well, you can change a law and that has to be applicable in a pending case. Klein carved out an exception for that when it determines the outcome in a case. But then what happens with Benk-Markazi is you see the, you know, the exception then gets swallowed back up by Peggy Spooner, the Spooner-Peggy, pardon me, the change of law rule. And so now we're back looking for you can't determine an outcome unless there's a change of law. But how do you even ask the question if there is there a change in law if you've been deprived of jurisdiction in the first instance to ask that question, right? And this statute presents that problem. We heard a lot today about the ratification provision in 324C. We heard about the supersession provision in 324F. But if the government and Mr. McArdle are correct, this court can't even reach those questions about whether 324C changes the law or whether 324F changes the law because this court, no court has jurisdiction to address those questions. If you give the language of 324E1, it's plain meaning. And that is why 324E1, you know, crosses that boundary. It is not a good, it doesn't, it crosses the fence between the judicial power and the legislative power. Once Congress has allowed parties into court, it cannot manipulate jurisdiction. And I think that's what's so resonating about Chief Justice Roberts' dissent in the Patchett case. And I pronounce it differently just from the moots that we've been going through. I don't know how to pronounce the name of that case. I know it's different from Judge Wynn. But what he asks in that case is how in the world is it any different for Congress to say in the case, in Jones' case against Smith, the court has no jurisdiction from saying in the case of Smith versus Jones, Smith wins. Either way, Congress has just declared the winner of the case, right? And it becomes empty formalism. And it becomes the situation where a constitutional rule becomes a matter of drafting. It becomes a drafting rule to protect, you know, the independence of the judiciary. If we're looking for magic language, oh, the statute incline actually prescribed dismissal. That will, you know, yes, that's the case. But that even- We review statutes all the time based on their drafting to determine what they mean, whether they're constitutional, not constitutional. So that is part of Congress's role. Well, I agree with that to an extent that as Judge Gregory observed and as Justice Scalia has repeatedly reminded us, the evidence of Congress's intent is in the language that it uses. But Congress's intent to declare a victor in a case is equally apparent on a statute that says this court lacks jurisdiction of any case against involving a Mountain Valley pipeline permit and similarly declares a victor if it were just to write a statute that said in the case of Appalachian Voices versus U.S. Department of Interior, U.S. Department of Interior wins. In Marcosi, didn't the Supreme Court say that Congress is permitted to change the law even when doing so will affect, effectively decide a pending case? Yes, and that's the rub and the trouble that we have here, right? Because where is this line between a statute that is outcome determinative, which I believe is the language that Bank Marcosi used, and the prohibition from Klein that I think the scholars and his progeny agree is Congress cannot direct the outcome in a pending case. You know, that is a fine hair to split, but nonetheless, that's the task that we're left with. And I think if you, when you draw that line as to that jurisdictional provision, the jurisdictional provision falls on the side of directing an outcome because Congress is now using its power to define the authority of the, I'm sorry, of the, Judge Wynn's word, not mine, the inferior court, to affect the outcome, specifically intentionally affect the outcome of a case. And it's that kind of transgression that does cross the line. And coming back to Klein just a bit, I would offer that an additional reason why this court's previous statements in Brainerd, et cetera, not only are they inconsistent with the Supreme Court's later statements in Bank Marcosi, et cetera, that Ms. Hunter highlighted, I would offer that they're also not binding on this court because those statements in Brainerd and Amur were offered in cases that did not involve pending litigation. So they didn't implicate the Klein rule at all. So there was no need for the court to try and divine what the Supreme Court rule in Klein meant. And especially when it's such a difficult matter, it shouldn't be decided without concrete circumstances. So I think that's a good reason to distinguish Brainerd or not feel bound by it here because it is, in fact, dicta. But one of the questions that comes up about Klein is, and it's been raised, I think, by Mr. McArdle and others, is that really, while that case was all about the pardon power of the executive and that it was a crossing of the exercise of the legislative branch of executive power, not the judicial power. But I don't think, as Mr. Verrilli argued, that Bank Marcosi says that. And if it does, it's inconsistent with Klein in itself. If you go back and look at Klein, it offers two separate holdings. First, it addresses the transgression of the judicial branch. And it offers the rule that we're discussing here today. And then it says, and it's also problematic for this reason, because it tries to redefine the effect of a pardon, which Congress cannot do. It's that also language. And that's why in the Sioux Nation case, the Supreme Court recognized there were two infirmities in the statute at issue in Klein. Chief Justice Roberts recognized that as well. So I don't think it's a safe place to retreat to say, well, it's only, you know, Congress only violates the Klein rule if it tries to do something that's otherwise unconstitutional. That's not supported by the original language in Klein, nor is it supported by, you know, the way that, you know, when you look at the cases, and again, we have to follow Klein as a case, the Supreme Court comes up with a rule that says, okay, if it's a pardon, then, you know, because we're dealing with a statute, Reconstruction statute comes up and says, you know, if you've been fighting against the United States, you can't get your property back. And Congress says, well, if you got a, Supreme Court says, you got a pardon, then you can get compensation. Congress comes back and says, no, if you got a pardon, that pardon itself tells you did something, therefore you don't get compensation. Supreme Court comes back and validates itself and said, yes, you can, and you've overstepped. Basically, you can't overrule us, as the subject said. It's different from the other cases. The other cases, when you're looking at, you know, the actual acts, and even this one is somewhat different. I mean, this is the Financial Responsibility Act. It's not even named, you know, the MVP Act or anything of that nature. I mean, when you had the Petoskey case, you were dealing with a particular act, the Gun Lake Act, so to speak. It was a specific act that was for that. So, when you're dealing with, you know, of course, Congress could do that. They could bury it. Looks like to me, anything in the middle of an act that didn't have anything to do with the act, except tangentially, and then get it passed. I'm not questioning that at all. And of course, that's what was done here. But when you're looking back at Klein and the basis upon what it was there, and no one has gone there to say it should be overruled, but it looks like to me, there's a lot of it that's just not there anymore. And the basis of it doesn't seem to be favored. Yet, you argue it as though it is the law of the land. I guess it is, because it's still on the books. But there's another instance. Spring Court ought to just clean that up. I mean, it just seems to me, why not clean it up? I mean, Spring Court doesn't have a problem going back and reversing old cases. If something is wrong and clean up the law, it makes the so-called inferior courts job a little easier. And so when you come, we are not subject to the kind of criticism that, by the way, the kind of criticism we've been loving here, something that won't come up, hasn't come up, but it has to be said, it's been a security concern. U.S. Marshals and others have been called up on us and stuff for those kind of comments that have been made on this so-called inferior court doing its job. And no one seems to care about that until you do what if I alluded to something I said in another case, what are you going to wait? You're going to wait until there's one free attack on a judge or one murder of a judge before you stop those kind of comments on courts like this. So, but when we're dealing with the Klein case here, that's the case that just bothers me. If you read that case for what it is, there's a lot truly that does favor you, but you've got to put it in context of what the Supreme Court has alluded to in cases on up to this plurality opinion in the Tots case. And that's the conundrum we're in today and what we are here for today, for which we all agree, we can be here to decide that kind of thing. In other words, jurisdiction stuff, just for that limited purpose. I see that I'm out of time. If I may briefly respond, the, I think the nub of it is it to the Klein may have been reeled in by Bank Markazi and Patrick suggest a talk suggest that there may be, you know, it is fracturing at least some of the current justices, but it remains the law of the land and it has not, as Ms. Hunter said, hmm? Law of the land. No, I'm sorry. Klein remains the law of the land. My antecedent was unclear there. I apologize, Judge Wendt. No, Klein remains the law of the land. It was, you know, Bank Markazi affirmed that it exists and every, I think, justice agreed there that the Congress does not have the authority to say in the case of Smith versus Jones, Smith wins. And the question is, where is the line for when, you know, that kind of clearly unconstitutional statute is enacted and something that is constitutional and our position is this one falls on the wrong side of the line, that it is not the type of high wall that Plout versus Spendthrift Farm requires because low walls are judicially indefensible in the heat of an interbranch conflict, which this statute has brought upon us. And with that, we would respectfully request that the court deny the pending motions to dismiss. Thank you. Thank you. I'll just try to make a few points. First, Mr. Cheney suggested that one of the key reasons that E-1 is unconstitutional is that it prevents the court from addressing the meaning of C-1. That's incorrect because C-1 moots petitioner statute based claims. So, the court could dispose of this case, grant the motions to dismiss exclusively on C-1 without even reaching him. So, that argument goes nowhere. Admittedly, this statute wasn't written in a vacuum. I mean, it was, it's the one brief that put that statute together. They looked at case law and crafted this together. The one question I did ask is, why did it limit just to grant and not deny? Well, the C-1 ratified the prior approvals that had already been granted. So, I mean- What, in denial, if an agency denies something, do we still have jurisdiction over that? If in the future, the, I think you would still have jurisdiction over a challenge to denial. So, D.C. Circuit gets it if he grants it. We get it if you deny it. If there's a challenge to the granting of approval that meets the criteria, I would need to go to the D.C. Circuit. I, no court would have jurisdiction. There would be, you could challenge the statute itself in the D.C. Circuit. I see. Now, Judge Witt also expressed consternation, I would say, that there's no clear standard of what the court is supposed to apply. But all of the judges, justices, and Patrick agreed on one thing. For an act of the legislature to be permissible, it has to change the law. Now, Justice Roberts tried to explain what that meant in his view, and he gave two indicia. He said, something permissibly changes the law if it applies, quote, some measure of generality or preserves an adjudicative role for the courts. We've had a lively debate about whether E-1 satisfies the first criterion, but let's turn to the second. Justice Roberts said that Dunlake manipulated a jurisdictional rule to direct the outcome in a single pending case. Yes. That's kind of counter to what's going on here. I'm not sure he's in bed with where we are. But you've got six other justices that are. Well, his concern stated on page one, virtually every page of his dissent, was that the statute there had the potential application of one, applied only to one pending case, and expressly dictated the outcome of that case. Neither of those two central criteria applies here. The statute of limitations that run in that case, correct? Right. That's why the range of potential applications was limited to one. That was central to his whole analysis, and that doesn't apply here. And even under his test, even if you were to adopt his test about what a change in the law means, which is as far as any of the justices has been willing to go, this one satisfies it. Let's put aside for a minute whether E-1 has some measure of generality. It preserves an adjudicative role for the courts. This gets to your line of questions, Judge Bakker. It's up to the court and the appropriate court to determine whether a challenged authorization meets the criteria in the statute, whether it's necessary for the construction and initial operation at full capacity. Now, the court never has jurisdiction in the abstract to say, well, is the project at full capacity now? But the appropriate court would have jurisdiction to determine whether an approval meets those criteria. And that preserves an adjudicative function. In fact, if you're saying in the statute that a court can determine whether the approval was appropriate, well, that just says that if the approval, it says if it's beyond the authority, right, if it's a denial, if there was a denial, they could. But other than that, the D.C. Circuit would only determine whether or not it's constitution. That's true. But in exercising its jurisdiction to determine its jurisdiction, the court would have to assess whether the petition challenges an approval that meets the statutory criteria for the exemption from the Natural Gas Act jurisdiction. So that would be, that's left to the judiciary. And in fact, we have a bona fide dispute already over the scope of the statute. In the Bohan and the Bold Alliance cases that are cited in the briefing, two pending D.C. Circuit cases where the court asked in one of them for supplemental briefs on the applicability of 324 by August 7th. And I guess there'll be a debate on whether it applies. And it'll be up to the court to resolve. The petitioners here and there, Supreme Court replies say, well, that case, those cases really don't implicate 324. Well, that just proves there's something for the court to adjudicate, whether they do or don't. And that's all that's required to pass constitutional muster, even under Justice Roberts' test. So E-1 passes that test. And I just want to briefly address, if I could, I see my time's almost up. Is it okay if I? You're concerned, Your Honor. You say the project is exempted from all environmental laws. That's not true. The statute ratifies existing approvals. And those approvals were issued pursuant to federal law. So MVP would still need to comply with the terms of those approvals. And that's a big difference. No, the approvals carry them all the way through full capacity. Whatever they need to do that, it's approved. Right. But what's approved are the federal approvals issued pursuant to federal law. There's no blanket statement in the act that says, they did the law as to them. That's the whole point of the statute. It says, listen, we're not saying what you're doing or have done is lawful. We're just saying it's approved. And that's what this does. It says it's approved through full capacity. Period. It doesn't say the project's approved. It says building the pipeline to the point of, that is the project, isn't it? That is the objective. It says agency approvals issued pursuant to federal law are ratified and approved. And you said the agency must do so. It directs the executive to say, agency, you will give those approvals. It set a deadline for certain outstanding approvals. Yes. But it didn't say, it didn't exempt the project itself from all environmental loss. That's the only point. Going forward. So after, let me see if I understand what you're saying. After initial construction to full capacity, which is approved based on this statute. Going forward, once that is complete, if there are environmental violations, if something explodes or there's some sort of environmental leak, this statute does not preclude lawsuits about that going forward, does it? No, it doesn't. On its face, it withdraws federal court jurisdiction only over approvals issued by certain agencies that are necessary and meet the statutory criteria. That's it. And it's up to the appropriate court to determine whether an appropriate, whether an approval meets those criteria or not. Thank you. Say it again. You said up to, so you include the fourth circuit? Well, that would depend on the applicability of E2 because E2 also speaks to, I thought you said we don't need to get to that. You said we could just do this, right? We could just decide this at C1, right? Yes, you could decide that the petitioners don't dispute that the statute C1 as written moots their statute-based claims because it supersedes the statutory provisions on which those claims are based. So you don't need to address the constitutionality of E1. If there are no further questions, the motion to dismiss should be granted. Thank you, Mr. McConnell. Thank you, Your Honor. So I have four points, and then I'll try to be succinct. First, there's been a lot of discussion about what Bank Marcosi says about Klein. I think it might help if I just read it because I think it will clear it all up. This is on page 228 of 578 U.S. It says, this is the 7-2 majority of the Supreme Court in Bank Marcosi. It says, the statute in Klein infringed the judicial power, not because it left too little for the courts to do. Not because of that, but because it attempted to direct the result without altering the legal standard governing the effect of a pardon, the standard Congress was powerless to prescribe. It's more or less exactly what this court said decades earlier in that Brehner case. The exact same thing. It's right there. It's in black and white. It's clear. 7-2 majority of the Supreme Court. I want to go to ratification next because I think it's really critical. I don't think my friends on the other side have disputed that the ratification in this statute is a substantive change in the law. What they have said is that it's an impermissible substantive change in the law because it was not a law of general application. It was targeted here. But Bank Marcosi addresses that exact point as well. That exact same issue was raised in Bank Marcosi. And if I could, I just would like to walk the court quickly through what Bank Marcosi says about that. It says, we have found that kind of argument suspect. That Congress, even laws that impose a duty or liability on a single individual or firm are not on that account invalid. This court and lower courts have upheld as a valid exercise of Congress's legislative power diverse laws that govern one or a very small number of specific subjects. And one of the cases it cites as proof of that proposition is the case I mentioned earlier, the Coalition to Save our Mall case from the D.C. Circuit, which I would commend again to Your Honor's attention. If Your Honor's read it, you'll see it's exactly like this statute. Exactly like this statute. And it was approved by the Supreme Court in Bank Marcosi. And this gets, and I focus on this because I think it may help with the question that you asked, Judge Winn, about if you're looking at jurisdiction stripping, pure jurisdiction stripping apart from a substantive change in the law, what's the limiting principle? I respectfully submit that the court doesn't need to get there here in this case because there was a valid substantive change in the law as a result of ratification. And therefore, by definition, this cannot be a case in which Congress manipulated the judicial rule, the jurisdictional rules to dictate an outcome without changing substantive law. By definition, it can't be that because they changed the substantive law. So that stark question, which we agree, you know, there's room for debate about that, not opposed here. Then finally, just one more point following up on our colleague, Judge Gregory, which I was unclear about, and my friend from the United States has picked up on it, but I just want to make sure it's crystal clear. Those permits and authorizations that have been approved, they themselves contain all conditions in the permits and the agencies can enforce those conditions against us if we don't abide by them. So it's not a free pass by any means. I just want to, Chief, I'm sorry, Judge Gregory, you've been Chief for so long and this is your first sitting, not being Chief, but Judge Gregory, if you will, I just want to make one comment. We've been living with this case for a long time, all of us. What I appreciate about a counsel in this case, I've been an appellate judge for 33 years, coming up soon, believe it or not, I started pretty young in life, I thank you. But you have conducted yourselves with great dignity in this court on both sides. Your arguments have been succinct. This is a very difficult area of the law. I mean, we weren't environmental lawyers when we became judges up here, but you educated us through the process. I mean, on all sorts of stuff, not just agency law, but creatures I've never heard of in my life, a candida, a Roanoke Long Perch, a Northern Long-Eared Bat, a Virginia Sparrow, what the heck is that? And yet, they are creatures we've been, at least for the plaintiff's side, they have taken a great interest in, and you've defended it, I think, I commend you because there's so much been going on outside of this courtroom, but you have not brought it in this courtroom, even today. The way in which you've argued your case, you stuck with the law, you argued the facts, and you argued the principles that are before us, but not once did you deviate to challenge the integrity of this court or even to try to stem the public's confidence in this judiciary. And I think that's important, that we all should work, and you as officers of the court, I just commend both of you, both sides. I want to say it because if we grant the motion, this is probably the last time we're going to see it. And people think, well, that's a terrible thing, the Fourth Circuit won't get it. Well, you know, we judges are human, too, and this is a lot of work. It really is a tremendous, and the lawyers know this on both sides, it is a tremendous amount of work to work through the legal morass of the issues here, and we've been doing it for a very long time, but I really appreciate having great lawyers who answer questions and do so with dignity and uphold our judiciary. My hat's off to both of you, and we don't know where we'll go from here, but thank you for the way in which you've been in the Fourth Circuit. All right. Thank you, counsel. I'll ask the clerk to adjourn the court. Sunny Dye. Honorable court stands adjourned. Sunny Dye. God save the United States and this honorable court.
judges: Roger L. Gregory, James Andrew Wynn, Stephanie D. Thacker